# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

THE STATE OF COLORADO,

     Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE, and
WILLIAM PELHAM BARR, in his official capacity as Attorney General of the
United States,

     Defendants.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

## INTRODUCTION

1.    The Byrne JAG Memorial Justice Assistance Program (Byrne JAG) provides grants that law enforcement agencies throughout Colorado rely on to keep our communities safe. The United States Department of Justice recently sought to impose conditions on these grants that violate the rule of law. The State of Colorado sues to ensure that the Department of Justice follows the rule of law and continues to provide these critical funds to law enforcement in Colorado.

2.    Specifically, the State of Colorado, through its Attorney General, brings this Complaint to ensure that the United States Department of Justice and

the U.S. Attorney General follow the rule of law and stop withholding congressionally appropriated federal funds unless Colorado agrees to comply with the Defendants' immigration-related conditions, referred to as Special Conditions, that are not authorized by statute and violate the Tenth Amendment to the U.S. Constitution, the Constitution's Spending Clause, the Administrative Procedure Act, and the Separation of Powers doctrine.

3.    Every federal court that has examined Defendants' attempts to impose immigration-related conditions on these grants has found them unlawful and an overreach by the federal government. *See, e.g., City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018)(holding conditions unlawful and entering nationwide injunction against their enforcement), *nationwide injunction vacated,* Case No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018)(*en banc*); *States of New York v. U.S. Dep't of Justice,* 343 F. Supp. 3d 213 (S.D.N.Y. 2018)(holding conditions unlawful); *City of Evanston v. Sessions*, No. 18-4853 (N.D. Ill. Aug. 9, 2018) (holding conditions unlawful and entering but staying injunction against enforcement against any member of the United States Conference of Mayors, open to all cities with more than thirty thousand residents), *stay lifted*, Case No. 18-2734 (7th Cir. Aug. 29, 2018); *City of Philadelphia v. Attorney General*, Case No. 18-2648, 2019 WL 638931 (3d. Cir. Feb. 15, 2019) (holding conditions unlawful and affirming, but narrowing, preliminary injunction barring enforcement of conditions).

4.      Nonetheless, Defendants continue to demand Colorado agree to these unlawful conditions. Because of these demands, Colorado now faces the prospect of losing approximately $2.7 million in grant money that it is entitled to in federal funding for State and local criminal justice programs.

5.      The federal funding at issue comes from the Byrne JAG Memorial Justice Assistance Program that is administered by the United States Department of Justice (DOJ) through the Office of Justice Programs (OJP), Bureau of Justice Assistance (BJA).

6.      Byrne JAG is a formula grant program that for years has provided funding to states and state localities.

7.      Beginning in 2017, Defendants added immigration-related conditions to the Byrne JAG Special Conditions. Substantially similar immigration-related Special Conditions are contained in the Fiscal Year (FY) 2018 Byrne JAG grant.

8.      For FY 2017, Colorado applied for, was awarded, and accepted Byrne JAG funds. Colorado's acceptance of the funds came with the caveat that Colorado would not comply with the immigration-related Special Conditions as litigation in other federal circuits had shown similar Special Conditions to be unconstitutional. After accepting the FY 2017 funds, Colorado distributed the Byrne JAG funds it received to criminal justice related programs.

9.      The immigration-related Special Conditions for Colorado's FY 2018 Byrne JAG grant are located in Special Conditions 41 through 46. *See* Byrne JAG FY 2018 Award document, attached hereto as Exhibit 1 at pp. 12-22.

10.     For FY 2018, Colorado applied for, was awarded, and accepted Byrne JAG funds, with the caveat that it would not comply with the immigration-related Special Conditions.

11.     After Colorado accepted the grant, the DOJ informed Colorado that DOJ's award of Byrne JAG grant funds for FY 2018 was premature. The DOJ made it clear that unless Colorado complied with the immigration-related Special Conditions, Colorado would not receive its funding grant. Colorado refused to comply with the Special Conditions as, to date, courts have regularly invalidated nearly identical immigration-related conditions on the grounds that the conditions were unlawfully imposed and that the conditions constitute "commandeering" of state and local officials in violation of the Tenth Amendment.

12.     Due to the Defendants' actions, unless Colorado acquiesces to the immigration-related Special Conditions, Colorado and its local jurisdictions will lose funding for important criminal justice related programs that are unrelated to the Special Conditions.

13.     For these reasons, and those discussed below, the Court should find that imposition of the immigration-related Special Conditions is unconstitutional

and enjoin the Defendants from withholding Colorado's Byrne JAG funding for FY 2018.

## JURISDICTION AND VENUE

14.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2201(a). Jurisdiction is also proper under the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. § 702.

15.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (e)(1). Defendants are United States agencies or officers sued in their official capacities. Plaintiff, the State of Colorado, is a sovereign state in the United States of America. A substantial part of the events or omissions giving rise to this complaint occurred and continue to occur within this district.

## PARTIES

16.     Plaintiff, the State of Colorado, is a sovereign state in the United States of America. As chief executive officer of the State of Colorado, Governor Jared Polis is responsible for applying for Byrne JAG grants, and he is required to certify that Colorado has complied with conditions for the receipt of Byrne JAG funds. The Colorado Department of Public Safety, an executive department within Colorado state government, through its Division of Criminal Justice, prepares the Byrne JAG grant application and is responsible for obtaining and disbursing funds under the program.

17.    Defendant United States Department of Justice is an agency of the United States government and has responsibility for implementing the Byrne JAG program.

18.    Defendant William Pelham Barr is the Attorney General of the United States and is the federal official in charge of the United States Department of Justice. The U.S. Attorney General is sued in his official capacity.

## GENERAL ALLEGATIONS

### A.    Byrne JAG program.

19.    The Byrne JAG program is the primary provider of federal criminal justice funding to state and local jurisdictions through Colorado's Division of Criminal Justice. The program is named after a New York police officer, Edward Byrne, who was killed in the line of duty. https//www.bja.gov/JAG/about.html.

20.    The Byrne JAG program has its origins in the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, tit. L 82 Stat. 197, which created grants to assist the law enforcement efforts of state and local authorities. *States of New York*, 343 F. Supp. 3d at 221. Congress designed the grant so that states and municipalities could adopt programs "based upon their evaluation of State and local problems of law enforcement." S. Rep. No. 90-1097, at 2 (1968).

21.    The 1968 Act contained language prohibiting "any department, agency, officer, or employee of the United States [from] exercise[ing] any direction, supervision, or control over any police force or any other law enforcement agency of

any State or any political subdivision thereof." *Id.* § 518(a), 82. Stat. at 208. This prohibition remains, codified under the same chapter where Byrne JAG is found. *See* 34 U.S.C. § 10228(a).

22.     Congress established the Byrne JAG program in 1988. *See* Anti-Drug Abuse Act of 1988*,* Pub. L. No. 100-690, tit. VI, § 6091(a), 102 Stat. 4181 (repealed 2006). The program was initially designed to "assist States and units of local government in carrying out specific programs which offer a high probability of improving the functioning of the criminal justice system." *Id.* tit. VI, § 6091(a), 102 Stat. 4181 (repealed 2006).

**B.     Byrne JAG administration of funding.**

23.     Between 1994 and 2005, Congress re-tooled the Byrne JAG program to more broadly include grant programs to reduce crime and improve public safety.

24.     In 2005, Congress enacted the Byrne JAG program in its current form to provide state and local governments with "more flexibility to spend money for programs that work for them rather than to impose a 'one size fits all solution.'" Pub. L. No. 108-447, 118 Stat. 2809 (2004); (H.R. Rep. No. 109-233, at 89 (2005); *see also* 34 U.S.C. § 10151(a), (b)(1).[1] The current form of the program was codified in 2006. The Byrne JAG program is administered by the OJP within the DOJ and is funded pursuant to 34 U.S.C. §§ 10151-10158.

---

[1] On September 1, 2017, the United States Code was reorganized, shifting the applicable provisions related to the Byrne JAG program from 42 U.S.C. § 3750-10158.

25.     In the Byrne JAG legislation, Congress established eight categories of criminal justice programs for which states and local governments can receive funding. 34 U.S.C. § 10152(a)(1).  Eligible grantees are entitled to their awards so long as their Byrne JAG funds go toward one or more of the following eight program areas: 1) law enforcement; 2) prosecution and courts; 3) prevention and education; 4) corrections and community corrections; 5) drug treatment and enforcement; 6) planning, evaluation, and technology improvement; 7) crime victim and witness programs; and, 8) mental health programs. *See* 34 U.S.C. §10152(a)(1)(A)-(H).

26.     Byrne JAG is structured as a formula grant, not a discretionary grant. *See* 34 U.S.C. §10156(a)(1). Grant funds are awarded to eligible grantees according to a prescribed formula. *Id.* The allocation of Byrne JAG funds is a function of population and violent crime in each state. *Id.* Under the statutory formula, 60 percent of the total allocation to a state must be given directly to the state and 40 percent of the total allocation to a state must be given to local governments within the state. *Id.* §§ 10156(b)(1)-(2); (d)(1). Congress guarantees to each state a minimum allocation of Byrne JAG funds. *See id.* at § 10156(a)(2).

27.     To obtain Byrne JAG funds each fiscal year, states and local governments must apply. *See* 34 U.S.C. § 10153(A). An application must include various items including the following:

a.  a certification that the program funds will not be used to "supplant

State or local funds," *Id.* § 10153(A)(1);

b.  an assurance that the application was submitted for review to the State's governing body, unit of local government or organization designated by that governing body, *Id.* § 10153(A)(2);

c.  an assurance that before the application was submitted it was made public and citizens and neighborhood-based organizations had an opportunity to comment, *Id.* § 10153(A)(3);

d.  an assurance that for each fiscal year the applicant shall maintain such "data, records, and information (programmatic and financial) as the Attorney General may reasonably require," *Id.* § 10153(A)(4); and

e.  a certification that the programs to be funded meet the requirements of the Byrne JAG statute, that all the information in the application is correct, that there has been appropriate coordination with affected agencies, and that "the applicant will comply with all provisions of this part and all other applicable Federal laws," *Id.* § 10153(A)(5).

28.    The Byrne JAG statute does not include any provisions authorizing the DOJ to apply conditions on funding.

**C.    Colorado's participation in the program.**

29.    Colorado has applied for and received Byrne JAG grants since the program was first enacted.

30.    Byrne JAG has funded a variety of Colorado and local law

enforcement programs and activities.

**D.    Changes in Byrne JAG requirements.**

31.    On July 25, 2017, the OJP within the DOJ, which administers Byrne JAG, announced new conditions for direct award applicants for the FY 2017 grant cycle.

32.    One new condition required Colorado or the relevant local government's chief legal officer and chief executive to submit a certification of compliance with a 1996 immigration statute, 8 U.S.C. § 1373, with respect to any program or activity that would be funded wholly or partially with the Byrne JAG award. This condition is commonly referred to as the "compliance" condition. In addition, grant applicants were required to: 1) permit personnel from the U.S. Department of Homeland Security (DHS) to access correctional or detention facilities to meet with suspected aliens and inquire as to their immigrations status; and, 2) on request, provide advance notice to DHS regarding the scheduled release date and time of an alien in the grant applicant's custody. These two conditions were and are commonly referred to as the "access" and "notice" conditions respectively.

**F.    Litigation over immigration-related Special Conditions.**

33.    The immigration-related Special Conditions have been the subject of several lawsuits filed by states and municipalities. For instance, in April 2018, the Seventh Circuit ruled that DOJ lacked authority to impose access and notice

conditions. *City of Chicago v. Sessions,* 888 F.3d at 277; *see also City of Chicago v. Sessions,* No. 17CV5720, 2018 WL 3608564, at *11-*12 (N.D. Ill. July 27, 2018). In related litigation, the Seventh Circuit ordered the entry of an injunction barring enforcement of these conditions against any member of the United States Conference of Mayors, an organization open to any city with a population of at least 30,000 residents. *City of Evanston v. Sessions*, Case No 18-2734 (7th Cir. Aug. 29, 2018). Twenty-three cities in Colorado are members of the Conference of Mayors, including Denver, Colorado Springs, Aurora, Fort Collins, Pueblo, and Grand Junction. Meet the Mayors (March 11, 2019), https://www.usmayors.org/mayors/. To the extent that these cities receive direct grants from the Byrne JAG program, the court has prevented the Special Conditions from applying to these direct grants. Additionally, three district courts have held that § 1373 violates the Tenth Amendment and therefore, the United States may not condition the receipt of Byrne JAG funds on compliance with that unconstitutional statute. *City of Chicago,* 2018 WL 3608564, at *5-*11 ("Section 1373 is unconstitutional on its face."); *City of Philadelphia v. Sessions,* 309 F. Supp. 3d 289, 328-31 (E.D. Pa. 2018) (holding § 1373 unconstitutional under the anti-commandeering doctrine); *States of New York,* 343 F. Supp. 3d at 245 (8 U.S.C. § 1373 (a)-(b), as it applies to states and localities, is unconstitutional under the Tenth Amendment's anti-commandeering doctrine). A fourth district court held that Notice and Access Conditions were *ultra vires. City of Los Angeles v. Sessions,* No. 18-7347-R (C.D. Cal. 2019).

11

34.     To date, no court considering challenges to the DOJ's immigration-related Special Conditions has found the conditions enforceable.

**G.    FY 2018 Special Conditions.**

35.     For FY 2018, Byrne JAG's Colorado grant has 63 Special Conditions, including six immigration-related conditions. The six immigration-related Special Conditions address the same general areas – compliance, access, and notice – that were contained in the FY 2017 Special Conditions.

36.     Special Condition 41 (Certification) for FY 2018 requires that a state's chief legal officer certify that the state will comply with 8 U.S.C. §§ 1373 and 1644. Section 1373 provides that a state, local government entity or official may not prohibit or restrain an official from sending to or receiving from the Immigration and Naturalization Service (INS) information regarding an individual's citizenship or immigration status. This prohibition extends to the sending, maintaining or exchanging of such information. Section 1644 provides that no state or local government entity may be prohibited or restricted from sending to or receiving from the INS information regarding the lawful or unlawful immigration status of an alien.

37.     Special Condition 42 (Ongoing Compliance) for FY 2018 requires that Colorado monitor itself and its sub-grantees for ongoing compliance with 8 U.S.C. §§ 1373 and 1644.

38.    Special Condition 43 (Information-Communication Restriction) requires Colorado to monitor itself and sub recipients for compliance with 8 U.S.C. §§ 1373 and 1644 regarding the sending to or receiving of information from U.S. Immigration and Customs Enforcement.

39.    Special Condition 44 (No Public Disclosure of Law Enforcement Information), requires Colorado to monitor itself and its sub recipients to ensure the nondisclosure of any law enforcement information that would result in a direct or indirect attempt to conceal or harbor an alien.

40.    Special Condition 45 (Access) requires Colorado to monitor itself and sub recipients to ensure that federal law enforcement officials are not denied access to State and local correctional facilities for purposes of interrogating aliens.

41.    Special Condition 46 (Notice), requires that Colorado monitor itself and its sub recipients to ensure that the federal government is provided with advance notice of the release of any illegal alien from incarceration in a State or local government facility.

**H.    Colorado's FY 2018 application and acceptance of funding.**

42.    In order to make a valid acceptance of the 2018 Byrne JAG grant, the DOJ requires Colorado to certify compliance with all 63 Special Conditions placed on the 2018 grant, including the immigration-related Special Conditions contained in Special Conditions 41-46. The immigration-related Special Conditions require Colorado to: certify its compliance and monitor the compliance of its sub recipients

13

with 8 U.S.C. §§ 1373 and 1644; share certain immigration-related information with federal immigration agencies; allow immigration agents access to local detention facilities; and to provide notice before releasing certain undocumented individuals.

43.    Colorado has applied for $2.7 million in Byrne JAG funding for FY 2018. As currently envisioned, funds from this program would be used for a variety of law enforcement programs, including:

- The purchase of portable police radio units for Ft. Lewis College and for the City of Yuma;

- Hiring a technician to work at the Colorado Bureau of Investigation searching spent firearms cartridges through a database.  The purpose of this work is to identify the scope of shooting incidents, or to associate a specific firearm with a shooting incident;

- Funding a program for the Saguache County Department of Social Services that seeks to meet the needs of youth at risk of placement in institutional settings or who are experiencing serious emotional or behavioral difficulties;

- The purchase of alternate light source equipment for a Major Crimes Investigation team being developed by the Ft. Morgan Police Department.  This technology aids in identifying latent evidence that is impossible to visualize with the naked eye;

- Funding for hiring a certified deputy for the City of Bayfield's Marshal's Office;

- Funding for Campus Connections, a Colorado State University award-winning therapeutic mentoring program aimed at reducing delinquent behaviors and improving the academic performance of disadvantaged and at-risk youth;

- Funding a diversion program coordinator for juvenile offenders who commit sexual offenses.  The program, which will be operated through the Office of the District Attorney for the Eighth Judicial District, will divert eligible youth from the juvenile justice system.  Eligible youth will receive specific interventions and treatment with the aim of avoiding the collateral consequences of being labeled a sex offender; and

- Funding for the implementation of a high-risk, high-need truancy reduction program in the Eighteenth Judicial District.

In the past, Byrne JAG funded programs have included programs to divert mentally ill offenders at the arrest state, sex offender apprehension units, and tactical teams to address emergency situations.

44.    On October 1, 2018, the Colorado Division of Criminal Justice received e-mail notification that the 2018 Byrne JAG award was available in the federal

grant management system for the signature of Colorado's Byrne JAG state administering agent.

45.    Acceptance of Byrne JAG funds is typically required by 45 days after the award date.

46.    On October 11, 2018, Lyndsay Clelland, of Colorado's Division of Criminal Justice, emailed Kathy Mason of the DOJ, stating that Colorado needed additional time to review the immigration-related Special Conditions before accepting its Byrne JAG funds for FY 2018.

47.    On October 15, 2018, via letter, Colorado accepted its 2018 Grant funds subject to the caveat that the immigration-related Special Conditions were unenforceable as applied to Colorado as a 2018 grantee.

48.    On December 14, 2018, Colorado forwarded its "2018 JAG award document" to DOJ. The document was signed by Joe Thome, the Director of Colorado's Division of Criminal Justice. *See* Ex. 1, p. 1.

49.    On January 27, 2019, Meg Williams, Byrne JAG Manager for Colorado's Department of Public Safety, had a telephone conversation with Kathy Mason, the State Policy Manager for the BJA, OJP and others. During this telephone conversation, Ms. Mason informed Ms. Williams that the BJA had prematurely awarded Colorado's 2018 grant. Ms. Mason informed Ms. Williams that the letter of October 15, 2018 from Colorado's Division of Criminal Justice constituted a material change to the grant award and thus disqualified Colorado as

a recipient. Ms. Mason indicated to Ms. Williams that Colorado had until March 1, 2019 to rescind its statements in the October 15, 2018 letter that the immigration-related Special Conditions were unenforceable as applied to Colorado.

50.     On March 1, 2019, Mr. Thome issued a letter to Ms. Mason stating that Colorado would not rescind the statements made in its October 15, 2018 letter regarding the immigration-related Special Conditions. Mr. Thome asked that the BJA process Colorado's grant.

51.     On or about March 7, 2019, Ms. Mason informed Ms. Williams that DOJ had received Colorado's March 1, 2019 letter. She further advised Ms. Williams that given Colorado's position that the immigration-related Special Conditions were unenforceable as to Colorado, the BJA would not approve Colorado's application for Byrne JAG funds for FY 2018. She informed Ms. Williams that Colorado could still rescind its objections to the immigration-related Special Conditions and receive the Byrne JAG funds.

## I.     The immigration-related Special Conditions violate the law and harm Colorado.

52.     The DOJ does not have statutory authority to impose the immigration-related Special Conditions. An "agency literally has no power to act … unless and until Congress confers power upon it." *Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 374 (1986). To date, other courts have found the imposition of nearly identical immigration-related Special Conditions unconstitutional.

53.    Byrne JAG is a formula grant program, not a discretionary program. As a formula grant program, Byrne JAG provides funding to applicants who meet statutory requirements. Byrne JAG does not provide the DOJ with discretion to impose the immigration-related Special Conditions.

54.    Congress has not authorized the DOJ to impose the immigration-related Special Conditions on Byrne JAG. Accordingly, the DOJ's imposition of the immigration-related Special Conditions violates the Separation of Powers between Congress and the Executive. Under Separation of Powers, the Executive does not have authority to amend or cancel an appropriation that Congress enacted.

55.    The imposition of the immigration-related Special Conditions violates 34 U.S.C. § 10228(a), which provides that "[n]othing in this title or any other Act shall be construed to authorize any department, agency, officer, or employee of the United States to exercise any direction, supervision, or control over any police force or any other criminal justice agency of any State or any political subdivision thereof."

56.    The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Congress may not "issue direct orders to the governments of the States." *Murphy v. NCAA,* 138 S. Ct. 1461, 1467 (2018). "Commandeering" occurs both when Congress commands affirmative action and when Congress imposes a prohibition. *Id.*

57.    Section 1373 violates the anti-commandeering principles because it provides that States and localities are prohibited from enacting laws, rules, or policies that "prohibit or in any way restrict, any government entity or official from sending to, or receiving from the [INS] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a). Because this statute does not relate to the "particular … program" of the Byrne JAG grants, it does not fall within the narrow exception permitted by *South Dakota v. Dole*, 483 U.S. 203, 207-08 (1987), which permits statutory conditions on federal grants that are related "to the federal interest in particular national projects or programs." (citation and quotation omitted).

58. Similarly, 8 U.S.C. §1644 violates the Tenth Amendment's anti-commandeering principles because it prohibits states and localities from restricting or prohibiting "sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States."  8 U.S.C. §1644.

59.    The imposition of the six immigration-related Special Conditions is arbitrary and capricious. For instance, the DOJ did not provide any explanation for the sudden imposition of these conditions. *See Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016) (with respect to the procedural requirements of rulemaking, "[an] agency 'must examine the relevant data and articulate a

satisfactory explanation for its action including a rational connection between the facts found and the choice made.") (internal quotation marks omitted).

60.    Colorado is entitled to Byrne JAG funds in the amount of $2.7 million.

61.    The DOJ's refusal to provide Colorado with its entitled funds unless it complies with the unenforceable immigration-related Special Conditions harms Colorado by denying it funds earmarked for State and local criminal justice programs.

## CAUSES OF ACTION

### COUNT 1
### Violation of Separation of Powers

62.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

63.    The Constitution vests the spending power in Congress, not the Executive Branch. U.S. Const. art. I § 8, cl. 1. Article I, Section 8 of the United States Constitution vests exclusively in Congress the spending power to "provide for the . . . General Welfare of the United States."

64.    Congress may delegate some discretion to the Executive to decide how to spend appropriated funds, but that discretion is limited by the scope of the delegation. *See City of Arlington v. FCC*, 569 U.S. 290, 297-98 (2013).

65.    The Executive cannot amend or cancel appropriations that Congress has duly enacted. *See Train v. City of New York*, 420 U.S. 35, 38, 44 (1975); *In re Aiken Cty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013).

66.    The FY 2018 immigration-related conditions amount to a refusal to spend money appropriated by Congress, in violation of the Executive's constitutional authority to administer the law.

67.    Congress did not authorize immigration-related conditions in the FY 2018 Byrne JAG grant; these conditions were imposed by the DOJ. These conditions amount to an improper usurpation of Congress' spending power by the Executive.

68.    The Byrne JAG statute does not authorize the U.S. Attorney General to impose generally applicable substantive conditions on grant recipients.

69.    DOJ does not have authority under 34 U.S.C. § 10102(a)(6) to impose any of the immigration-related conditions.

70.    DOJ does not have the authority to determine that §§ 1373 and 1644 or other statutes related to immigration are "applicable federal law" for purposes of 34 U.S.C. § 10153(a)(5)(D).

71.    Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a declaration that the U.S. Attorney General's imposition of immigration-related conditions on FY 2018 Byrne JAG funds violates the constitutional principle of Separation of Powers and impermissibly arrogates to the Executive power that is reserved to Congress. Plaintiff is also entitled to a permanent injunction preventing the U.S. Attorney General from putting those conditions into effect.

## COUNT II
### Violation of the Administrative Procedure Act through *Ultra Vires* Conduct

72.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

73.    Under the Administrative Procedure Act (APA), a court must set "aside agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). DOJ's imposition of immigration-related conditions on the FY 2018 Byrne JAG award are such agency action.

74.    DOJ may only exercise authority conferred by statute. *See City of Arlington*, 569 U.S. at 297.

75.    The Byrne JAG statute does not authorize the U.S. Attorney General to impose conditions on the receipt of Byrne JAG funds, or to deny funds to states or local governments that fail to comply with those conditions. *See City of Chicago*, 888 F.3d at 283.

76.    DOJ also lacks statutory authority to condition Byrne JAG funds on compliance with §§ 1373 and 1644. The Byrne JAG statute's requirement that grantees comply with "all applicable Federal laws" does not encompass these or other immigration-related statutes. Rather, the phrase "all applicable Federal laws" refers to the laws that regulate the conduct of federal grant recipients as grant recipients and not to every section of the U.S. Code applicable to state government.

22

*See States of New York,* 343 F. Supp. 3d at 231. These statutes do not regulate

grantees as grantees nor do they mention federal grants or funds.

77.     Congress has repeatedly considered and rejected legislation that would

withhold grant funding as a penalty for noncooperation with federal immigration

law.[2]

78.     Because the President acts at the lowest ebb of his power if he acts

contrary to the expressed or implied will of Congress, *Youngstown Sheet & Tube Co.*

*v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring), Courts should look

skeptically on executive action where Congress declined to enact legislation that

would have granted the same or substantially similar authority to the executive

branch. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159-60

(2000). There is no provision in the United States Constitution that authorizes the

President to enact, amend, or repeal statutes, including appropriations already

approved by Congress and signed into law by the President. *Clinton v. City of New*

*York*, 524 U.S. 417, 438 (1998).

---

[2] *See, e.g.,* Stop Dangerous Sanctuary Cities Act, H.R. 5654, 114th Cong. § 4 (2016); Stop Dangerous Sanctuary Cities Act, S. 3100, 114th Cong. § 4 (2016); Enforce the Law for Sanctuary Cities Act, H.R. 3009, 114th Cong. (2016); Mobilizing Against Sanctuary Cities Act, H.R. 3002, 114th Cong. § 2 (2015); Stop Sanctuary Policies and Protect Americans Act, S. 2146, 114th Cong. § 3 (2015); Stop Sanctuary Cities Act, S. 1814, 114th Cong. § 3(a) (2015); Stop Sanctuary Cities Act, S. 1814 114th Cong. § 2 (2015); Financial Services and General Government Appropriations Act, FY2017, H.R. 5485, 114th Cong., § 1217 (2016); *see also* H.R. 3355, 103d Cong. § 5119 (Nov. 19, 1993) (Senate version of Violent Crime Control and Law Enforcement Act, which would have authorized DOJ to withhold grant funding if the jurisdiction did not cooperate with the Immigration and Naturalization Service).

79.    Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, Plaintiff is entitled to a declaration that the U.S. Attorney General lacks authority to impose the immigration-related conditions on FY 2018 Byrne JAG funds and, in doing so, has acted contrary to law in violation of the APA. Plaintiff is also entitled to a permanent injunction preventing the U.S. Attorney General from putting those conditions into effect.

**COUNT III**
**Violation of the Administrative Procedure Act**
**Agency Action Not in Accordance with law**

80.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

81.    Under the APA, a court must set "aside agency action" that is "not in accordance with law." 5 U.S.C. § 706(2)(A).

82.    The immigration-related conditions in the 2018 Byrne JAG award are invalid under 34 U.S.C. § 10228(a), which prohibits Executive Branch officials from using law enforcement grants to exert "any direction, supervision, or control" over any state or local police force or criminal justice agency.

83.    Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, Plaintiff is entitled to a declaration that the U.S. Attorney General is without authority to impose the immigration-related conditions in Colorado's FY 2018 Byrne JAG award and, in doing so, has acted contrary to law under the APA. Plaintiff is also entitled to a

permanent injunction preventing the U.S. Attorney General from putting those conditions into effect.

## COUNT IV
### Violation of the Administrative Procedure Act through Arbitrary and Capricious Agency Action

84.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

85.    Under the APA, a court must set "aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A). For example, agency action may be considered arbitrary, capricious, or an abuse of discretion because the agency has failed to consider relevant evidence or "articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

86.    An agency's departure from prior practice can also serve as a basis for finding an agency's interpretation to be arbitrary and capricious if the change in policy constitutes an "unexplained inconsistency." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005).

87.    DOJ departed from more than a decade of past practice when it imposed immigration-related conditions on Colorado's receipt of Byrne JAG funds yet provided almost no explanation for its decision. *See Encino Motorcars, LLC*, 136

S. Ct. at 2126 ("the agency must at least display awareness that it is changing position and show that there are good reasons for the new policy").

88.    DOJ has never previously determined that either §1373 or §1644 is an "applicable Federal law" for the purposes of the Byrne JAG program.

89.    Despite DOJ's shift in policy, it has provided virtually no explanation for its decisions. It released no reports, studies or analysis in connection with its July 25, 2017 announcement of the FY 2017 immigration-related grant conditions. Neither did it release reports, studies or analysis in connection with its October 1, 2018 Byrne JAG grant containing those and additional immigration-related grant conditions. Nor has it attempted to justify its aggressive and shifting interpretations of §§ 1373 and 1644.

90.    In addition, DOJ "relied on factors which Congress has not intended it to consider," *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, by, for example, evaluating grant applicants on the basis of their compliance with the immigration-related conditions rather than on their compliance with expressly enumerated statutory application requirements. *See* 34 U.S.C. § 10153(a)(1)-(6).

91.    DOJ also "entirely failed to consider an important aspect of the problem" by failing to recognize how § 1373 and statutes like it, including § 1644, interfere with local policies that promote public health and safety. *See City of Philadelphia v. Sessions,* 280 F. Supp. 3d 579, 625 (E.D. PA 2017).

92.    Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, Plaintiff is entitled to a declaration that the immigration-related conditions imposed on FY 2018 Byrne JAG funds violate the APA. Plaintiff is also entitled to a permanent injunction preventing the U.S. Attorney General from putting those conditions into effect.

## COUNT V
## Tenth Amendment: Commandeering

93.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

94.    The Tenth Amendment prohibits the federal government from "requir[ing] States and localities "to govern according to Congress' instructions," *New York v. United States*, 505 U.S. 144, 162 (1992), or "command[ing] the States' officers … to administer or enforce a federal regulatory program," *Printz v. United States*, 521 U.S. 898, 935 (1997).

95.    Sections 1373 and 1644 violate the Tenth Amendment because they "unequivocally dictate [ ] what a state legislature may and may not do." *Murphy*, 138 S. Ct. at 1476. Congress does not have the "power to issue direct orders to the governments of the States." *See City of Philadelphia*, 309 F. Supp. 3d. at 328.

96.    Because §§ 1373 and 1644 violate the Tenth Amendment, DOJ cannot require jurisdictions to comply with the statutes as a condition of receiving FY 2018 Byrne JAG funds.

97.    Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a declaration that the §1373 and §1644 conditions imposed on Colorado's FY 2018 Byrne JAG grant

violate the Tenth Amendment. Plaintiff is also entitled to a permanent injunction preventing the U.S. Attorney General from putting these conditions into effect.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court to:

(a) Declare that the immigration-related conditions imposed on the FY 2018 Byrne JAG program are unlawful;

(b) Permanently enjoin Defendants from enforcing the immigration-related conditions contained in the FY 2018 Byrne JAG grant on the State of Colorado and retain jurisdiction to monitor DOJ's compliance with this Court's judgment;

(c) Issue a writ of mandamus compelling Defendants to immediately disburse the State of Colorado's FY 2018 award, without further delay;

(d) Declare that 8 U.S.C. §1373 violates the Tenth Amendment and is unconstitutional;

(e) Declare that 8 U.S.C. §1644 violates the Tenth Amendment and is unconstitutional;

(f) Award Plaintiff its reasonable fees, costs, and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412; and

(g) Grant other such relief as this Court may deem proper.

Respectfully submitted this 12th day of March, 2019.

PHILIP J. WEISER
Attorney General


*s/      Kathleen Spalding*
ERIC R. OLSON*
Solicitor General
PATRICK L. SAYAS*
KATHLEEN SPALDING*
WILL ALLEN*
Senior Assistant Attorneys General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO  80203
Telephone:  720-508-6626
FAX:        720-508-6032
E-Mail:  eric.olson@coag.gov
         pat.sayas@coag.gov;
         kit.spalding@coag.gov
         will.allen@coag.gov
*Counsel of Record

Attorneys for the State of Colorado


<u>Plaintiff's Address</u>:
200 East Colfax Avenue
Denver, CO 80203